1
2
3
4                      UNITED STATES DISTRICT COURT
5                   NORTHERN DISTRICT OF CALIFORNIA
6                            SAN JOSE DIVISION
7

8   SCOTT JOHNSON,                        Case No.  5:19-cv-02671-EJD

                    Plaintiff,
9                                         **ORDER GRANTING DEFAULT
        v.                                JUDGMENT**
10
                                          Re: Dkt. No. 24
11  JOHN J. CORTESE, et al.,

12                  Defendants.

13          Plaintiff Scott Johnson brings this action against John Cortese and Izzet Yusuf Kufioglu

14  (together, "Defendants"), alleging violations of the Americans with Disabilities Act of 1990

15  ("ADA"), 42 U.S.C. § 12101, et seq., and the California Unruh Civil Rights Act (the "Unruh

16  Act"), Cal. Civ. Code §§ 51–53.  *See Compl.* ¶¶ 27–40, Dkt. No. 1.  Before the Court is Mr.

17  Johnson's Motion for Default Judgment seeking injunctive relief along with statutory damages,

18  attorneys' fees, and costs.  Dkt. No. 24 ("Motion").  Defendants have not appeared in this matter,

19  did not oppose or otherwise respond to the Motion, and failed to appear at the hearing on the

20  Motion on December 10, 2020.

21          Having considered Mr. Johnson's papers and arguments at the hearing, the Court

22  GRANTS the Motion as to Defendant Kufioglu with the terms stated below.

23      **I.    Background**

24          According to his Complaint, Mr. Johnson is a level C-5 quadriplegic who cannot walk and

25  has significant manual dexterity impairments.  Compl. ¶ 1.  Mr. Johnson says that he uses a

26  wheelchair for mobility and has a specially equipped van.  *Id.*  Defendant John Cortese is the

27  alleged owner of the real property located at 3495 McKee Road, San Jose, California.  *Id.* ¶¶ 2-4.

28  Case No.: 5:19-cv-02671-EJD
    ORDER GRANTING DEFAULT JUDGMENT
                                        1

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Defendant Izzet Yusuf Kufioglu is the alleged owner of Checkers auto Repair & Gas

2   ("Checkers"), the business located at the same address. *Id.* ¶¶ 5-7. Mr. Johnson provided public

3   records to substantiate his allegations that Mr. Cortese owns the real property and Mr. Kufioglu

4   owns the business. Dkt. No. 24-8, Exhibit 5. These records as provided are partially cut off and

5   thus difficult to read in full, but appear to indicate that "St Vincent Properties" owns the real

6   property located at 3495 McKee Road, San Jose, CA 95127. *Id.* at 7-8 (showing a "Property

7   Profile" for the address, which lists "St Vincent Properties" as the current owner, having

8   purchased the property and recorded the deed transfer in 1987). Records in the same exhibit from

9   an unidentified source indicate that Mr. Cortese is one of four "Registrants" of St Vincent

10  Properties. *See id.* at 13.

11      Mr. Johnson alleges that he visited Checkers twice in January 2019 and once in March

12  2019, each time with the intention to avail himself of its goods and services and to determine if the

13  business complied with disability access laws. *Id.* ¶ 12. Each time Mr. Johnson visited Checkers,

14  he found that it did not provide accessible parking in conformance with the ADA Standards. *Id.*

15  ¶¶ 15-16. Although there was ADA signage and blue paint on a curb in front of a parking space,

16  there was no designated access aisle as required to accommodate vehicles equipped with

17  wheelchair lifts or ramps. Dkt. No. 24-5, Declaration of Scott Johnson in Support of Plaintiff's

18  Request for Default Judgment ("Johnson Decl."), ¶ 6. He also found that while Checkers has a

19  sales counter where is handles its transactions with customers, there was no accessible sales

20  counter in conformance with the ADA Standards. Compl. ¶¶17-19.

21      Mr. Johnson asserts that he is in this geographical region often and would like to return to

22  Checkers once it has been brought into compliance with the ADA. *Id.* ¶ 25. To that end, Mr.

23  Johnson brought this action for injunctive relief and damages under the ADA and Unruh Act. He

24  filed the complaint on May 17, 2019, and sought entry of default as to Mr. Kufioglu on July 8,

25  2019, which the Clerk entered on July 9, 2019. Dkt. Nos. 11, 12. On December 5, 2019, Mr.

26  Johnson filed a Motion for Entry of Default as to Mr. Cortese, which the Clerk entered on

27  December 9, 2019. Dkt. Nos. 20, 21. After ten months during which Mr. Johnson filed nothing

28  Case No.: 5:19-cv-02671-EJD
ORDER GRANTING DEFAULT JUDGMENT

1    on the docket, this Court issued an Order to Show Cause why his claims should not be dismissed

2    for failure to prosecute.  Dkt. No. 22.  In response to the Order to Show Cause, Mr. Johnson filed

3    the present Motion for Default Judgment.  Neither Defendant has made any appearance in the

4    action.

5    **II.    Legal Standard**

6    Default judgment may be granted when a party fails to plead or otherwise defend against

7    an action for affirmative relief.  Fed. R. Civ. P. 55(a).  Discretion to enter default judgment rests

8    with the district court.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  When deciding

9    whether to enter default judgment, the court considers:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's
> substantive claim, (3) the sufficiency of the complaint, (4) the sum of money
> at stake in the action, (5) the possibility of a dispute concerning material facts,
> (6) whether the underlying default was due to excusable neglect, and (7) the
> strong policy underlying the Federal Rules of Civil Procedure favoring
> decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) (citing 10 Moore's Federal Practice §

55).  In evaluating these factors, all factual allegations in the complaint are taken as true, except

those relating to damages.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir.

1987).

**III.    Jurisdiction and Service of Process**

Before entering default judgment, a court must determine whether it has subject matter

jurisdiction over the action and personal jurisdiction over the defendant.  *See In re Tuli*, 172 F.3d

707, 712 (9th Cir. 1999) ("A judgment entered without personal jurisdiction over the parties is

void.").

**A.  Subject Matter Jurisdiction**

District courts have subject matter jurisdiction over all civil actions arising under the laws

of the United States.  28 U.S.C. § 1331.  Further, in any civil action where the district courts have

subject matter jurisdiction, the district courts will also have supplemental jurisdiction over all

other claims that are so related to claims in the action, such that they form part of the same case or

Case No.: 5:19-cv-02671-EJD
ORDER GRANTING DEFAULT JUDGMENT
3

*United States District Court*
*Northern District of California*

controversy.  28 U.S.C. § 1367.  Mr. Johnson's claim for relief pursuant to the ADA presents a

civil action arising under a law of the United States.  Therefore, this Court has subject matter

jurisdiction over Mr. Johnson's ADA claim.  Moreover, Mr. Johnson's claim for relief pursuant to

the Unruh Act is related to the ADA claim because it arises out of the same "case or controversy,"

namely Mr. Johnson's visits to Checkers where he encountered alleged violations of both laws.

*See* 28 U.S.C. § 1367(a).  Therefore, the Court has supplemental jurisdiction over Mr. Johnson's

Unruh Act claim.

### B.  Personal Jurisdiction and Service of Process

Serving a summons establishes personal jurisdiction over a defendant, who is subject to the

jurisdiction of a court of general jurisdiction in the state where the district court is located.  Fed. R.

Civ. P. 4(k)(1).  Pursuant to Rule 4(e) of the Federal Rules of Civil Procedure, an individual

defendant may be served by: (1) delivering a copy of the summons and complaint to the individual

personally; (2) leaving a copy of the summons and complaint at the individual's dwelling or usual

place of abode with someone of suitable age and discretion who resides there; or (3) delivering a

copy of the summons and complaint to an agent authorized by appointment or law to receive

service of process.  Fed. R. Civ. P. 4(e)(2).  Alternatively, an individual defendant may be served

with process pursuant to the law of the state where the district court is located.  Fed. R. Civ. P.

4(e)(1).

Under California law, individual defendants may be served by several means, including

personal delivery of the summons and complaint to the individual or the individual's authorized

agent.  Cal. Code Civ. Proc. §§ 415.10, 416.90.  An individual defendant may also be served under

California law through substituted service by "leaving a copy of the summons and complaint

during usual office hours in [the defendant's] office . . . with the person who is apparently in

charge thereof . . . and by thereafter mailing a copy of the summons and complaint . . . where a

copy of the summons and complaint were left."  Cal. Code Civ. Proc. § 415.20(a).

The record indicates that Mr. Johnson successfully effectuated personal service on Mr.

Kufioglu on May 28, 2019.  Proof of Service of Summons, Dkt. No. 10.  Although the Motion

United States District Court
Northern District of California

suggests that Mr. Cortese was also personally served, the record indicates that Mr. Johnson actually served Mr. Cortese via substituted service on October 9, 2019 by leaving copies of the summons and complaint at Checkers with the person apparently in charge (John Doe) and thereafter mailing a copy of summons and complaint at the place where the copies were left. Proof of Service of Summons, Dkt. No. 17.  The Court is satisfied that Mr. Johnson gave Defendants proper service of process under both the Federal Rules of Civil Procedure and the California Code of Civil Procedure.  Moreover. Mr. Johnson alleges that both Defendants own property in California and are thus subject to the general jurisdiction of this Court.  Therefore, the Court has personal jurisdiction over the Defendants.

IV. ***Eitel* Factors**

**A. Possibility of Prejudice to the Plaintiff**

The first *Eitel* factor requires the Court to consider whether Mr. Johnson would be prejudiced if default judgment is not entered.  Unless default judgment is entered, Mr. Johnson will have no other means of recourse against Defendants.  As such, Mr. Johnson will be prejudiced if default judgment is not entered.  *See, e.g., Johnson v. In Suk Jun*, No. 19-CV-06474-BLF, 2020 WL 6507995, at *3 (N.D. Cal. Nov. 5, 2020); *Ridola v. Chao*, No. 16-CV-02246-BLF, 2018 WL 2287668, at *5 (N.D. Cal. May 18, 2018) (finding that plaintiff would be prejudiced if default judgment was not entered because she "would have no other means of recourse against Defendants for the damages caused by their conduct").

**B. Substantive Merits and Sufficiency of the Claims**

Under the second and third *Eitel* factors, in deciding whether to grant default judgment, the Court must examine the merits of Johnson's substantive claims and the sufficiency of the complaint.  *Eitel*, 782 F.2d at 1471–72; *see Bd. of Trustees, I.B.E.W. Local 332 Pension Plan Part A v. Delucchi Elec., Inc.*, No. 5:19-CV-06456-EJD, 2020 WL 2838801, at *2 (N.D. Cal. June 1, 2020) ("Courts often consider the second and third *Eitel* factors together") (citing *PepsiCo, Inc. v. Cal. Security Cans*, 283 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)).  At this stage, the Court takes "the well-pleaded factual allegations" in the complaint as true; however, the "defendant is not held

United States District Court
Northern District of California

1    to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV, Inc. v. Hoa*

2    *Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). "[N]ecessary facts not contained in the pleadings, and

3    claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N.*

4    *Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

5         The motion seeks default judgment on two claims: (a) a violation of the Americans With

6    Disabilities Act of 1990 ("ADA"); and (b) a violation of the California Unruh Act. The Court

7    examines each claim in turn.

                              **i.  Title III of the ADA**

9         Title III of the ADA prohibits discrimination on the basis of disability within places of

10   public accommodation: "No individual shall be discriminated against on the basis of disability in

11   the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or

12   accommodations of any place of public accommodation by any person who owns, leases (or leases

13   to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). For purposes of Title

14   III, discrimination includes "a failure to remove architectural barriers . . . in existing facilities .. .

15   where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). "Readily achievable"

16   is defined as "easily accomplishable and able to be carried out without much difficulty or

17   expense." 42 U.S.C. § 12181(9).

18        First, Mr. Johnson must establish Article III standing to bring a claim under the ADA. To

19   establish Article III standing, Mr. Johnson must demonstrate he suffered an injury in fact,

20   traceable to Defendants' conduct, and redressable by a favorable court decision. *Ridola*, 2018 WL

21   2287668, at *5 (citing *Hubbard v. Rite Aid Corp.*, 433 F. Supp. 2d 1150, 1162 (S.D. Cal. 2006)).

22   Mr. Johnson claims that he suffers from a disability within the meaning of the ADA. Compl. ¶ 1.

23   Mr. Johnson also alleges that he personally encountered access barriers at Checkers with respect to

24   the lack of accessible parking or accessible sales counter. *Id.* ¶¶ 12–20. Further, Mr. Johnson

25   claims that he will return to Checkers once its facilities are made accessible. *Id.* ¶ 25; *see Vogel v.*

26   *Rite Aid Corp.*, 992 F. Supp. 2d 998, 1008 (C.D. Cal. 2014) ("Indeed, '[d]emonstrating an intent to

27   return to a non-compliant accommodation is but one way for an injured plaintiff to establish

28   Case No.: 5:19-cv-02671-EJD
     ORDER GRANTING DEFAULT JUDGMENT

*United States District Court*
*Northern District of California*

1    Article III standing to pursue injunctive relief.'"); *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d

2    939, 949 (9th Cir. 2011) (same).  Because Mr. Johnson's factual allegations are accepted as true,

3    and an award of statutory damages and injunctive relief would redress Mr. Johnson's alleged

4    injuries caused by Defendants' conduct, the Court finds that Mr. Johnson has Article III standing

5    to sue under the ADA.

6         Next, Mr. Johnson must establish all of the elements of a Title III discrimination claim.  He

7    must show that (1) he is disabled within the meaning of the ADA; (2) Defendants own, lease, or

8    operate a place of public accommodation; and (3) he was denied public accommodations by

9    Defendants because of his disability.  *See Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir.

10   2007).  To succeed on an ADA claim based on architectural barriers, Mr. Johnson "must also

11   prove that: (1) the existing facility presents an architectural barrier prohibited under the ADA; and

12   (2) the removal of the barrier is readily achievable."  *Ridola*, 2018 WL 2287668, at *5.

13        Under the ADA, a physical impairment that substantially affects a major life activity, such

14   as walking, qualifies as a disability.  42 U.S.C. §§ 12102(1)(A), (2)(A).  As noted, Mr. Johnson is

15   a C-5 quadriplegic who uses a wheelchair for mobility.  Compl. ¶ 1.  Thus, Mr. Johnson has

16   established that he has a disability within the meaning of the ADA.

17        With respect to the Defendants' ownership of operation of the place of public

18   accommodation, Mr. Johnson alleges that Mr. Kufioglu owns Checkers and Mr. Cortese owns the

19   property on which Checkers sits.  Mr. Johnson submitted public records to substantiate these

20   allegations.  Dkt. No. 24-5, Exhibit 5.  As an initial matter, it is not clear where these records are

21   from or whether they are accurate or authenticated.  While these records indicate that Mr.

22   Kufioglu owns the business, they indicate that St Vincent Properties, and not Mr. Cortese, owns

23   the real property.  Mr. Johnson did not acknowledge this detail from the public records in his

24   papers, and was unable to comment on the issue at oral argument.  Nor does Mr. Johnson allege

25   any facts indicating that he might pierce the corporate veil or that there is an alter ego relationship

26   between Mr. Cortese and St Vincent Properties such that Mr. Cortese could be held liable for the

27   company's violation.  Although the Court must accept Mr. Johnson's allegations as true, he

28   Case No.: 5:19-cv-02671-EJD
     ORDER GRANTING DEFAULT JUDGMENT

United States District Court
Northern District of California

1   appears to have submitted facts contradicting his allegations in the record.  The Court granted Mr.

2   Johnson leave to file supplemental evidence demonstrating that Mr. Cortese owns the property,

3   but Mr. Johnson failed to file any evidence by the deadline.  Thus, Mr. Johnson has failed to

4   establish the elements of his claim against Mr. Cortese.

5        Mr. Johnson alleges that during several visits to Checkers, he personally encountered

6   access barriers with respect to the parking lot and was therefore denied public accommodations by

7   Defendants because of his disability.  Compl. ¶ 12-20.  Specifically, he alleges that the lack of

8   accessible parking spaces violates § 208 of the 2010 ADA Standards.  Mot. at 9.  He has further

9   submitted a number of photographs documenting the parking areas surrounding Checkers and

10  showing the lack of accessible parking space.  *See* Dkt. No. 24-7, Exhibit 4.  However, Mr.

11  Johnson does not specify what section of the ADA Standards the sales counter allegedly violates,

12  nor does he provide any photographs evidencing the fact that Checkers lacks an accessible sales

13  counter or has a sales counter at all.  Indeed, the sales counter is not mentioned whatsoever in the

14  Memorandum of Points and Authorities in Support of the Application for Default Judgment.  *See*

15  *generally*, Dkt. No. 24-1.  Nevertheless, because the Court accepts Mr. Johnson's allegations in

16  the Complaint as true, the Court finds that he has sufficiently established that both the lack of

17  accessible parking and the lack of an accessible sales counter at Checkers constitute architectural

18  barriers prohibited under the ADA.

19       Finally, with respect to the requirement that removal of the barriers be "readily

20  achievable," Mr. Johnson argues that this quesion is an affirmative defense that must be pled by

21  the answering party.  *See* Mot. at 9; *see also Wilson v. Haria & Gogri Corp.*, 479 F. Supp. 2d

22  1127, 1133 (E.D. Cal. 2007).  Accordingly, Mr. Johnson believes that this affirmative defense has

23  been waived because Defendants have not appeared in this matter.  *See* Mot. at 9.

24       The Ninth Circuit recently decided to follow a burden-shifting framework to determine

25  who bears the burden of proving that removal of an architectural barrier is readily achievable.  *See*

26  *Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030 (9th Cir. 2020).  Under this burden-

27  shifting analysis, "the plaintiff bears the initial burden of plausibly showing that a proposal for

28  Case No.: 5:19-cv-02671-EJD
    ORDER GRANTING DEFAULT JUDGMENT
                                8

removing a barrier is readily achievable, and then the defendant bears the ultimate burden of

persuasion on an affirmative defense that removal of a barrier is not readily achievable." *In Suk*

*Jun*, 2020 WL 6507995, at *5 (citing *Lopez*, 974 F.3d 1030).

Although Mr. Johnson does not address *Lopez* in his Memorandum, the Court finds that he

has met his initial burden to plausibly show that removal of the identified barriers is readily

achievable.  Mr. Johnson alleges that the identified barriers are "easily removed without much

difficulty or expense" and that they are "the types of barriers identified by the Department of

Justice as presumably readily achievable to remove."  Compl. ¶ 24.  Additionally, the Complaint

alleges that "there are numerous alternative accommodations" to provide people with disabilities a

greater level of access even if Defendants could not achieve a complete removal of barriers.  *Id.*

Federal regulations provide a non-exclusive list of steps to remove barriers, including

"[c]reating designated accessible parking spaces."  28 C.F.R. § 36.304(b)(18).  Courts have also

observed that the listed items are "examples of readily achievable steps to remove barriers."

*Johnson v. Altamira Corp.*, No. 16-CV-05335 NC, 2017 WL 1383469, at *3 (N.D. Cal. Mar. 27,

2017), *report and recommendation adopted,* No. 16-CV-05335-LHK, 2017 WL 1365250 (N.D.

Cal. Apr. 14, 2017).  Moreover, at the default judgment stage, courts have found allegations

similar to Mr. Johnson's allegations sufficient to show that the removal of the barriers at issue is

readily achievable.  *See, e.g.*, *Ridola*, 2018 WL 2287668, at *10–*11 (concluding that plaintiff met

his burden with respect to defendant's parking spaces and guestrooms); *In Suk Jun*, 2020 WL

6507995, at *5 (concluding that plaintiff met his burden with respect to parking violations based

on identical allegations).

Because Mr. Johnson has met his burden, Defendants now have the burden of persuasion

on an affirmative defense that removal of the identified barriers is not readily achievable.  Here,

Defendants have not defended this action.  Thus, Defendants have failed to meet their burden to

show that removal of the identified barriers is not readily achievable.

In sum, the Court finds that Mr. Johnson has alleged the requisite elements for an ADA

claim.

United States District Court
Northern District of California

### ii.  Unruh Civil Rights Act

"Any violation of the ADA necessarily constitutes a violation of the Unruh Act."  *Molski*, 481 F.3d at 731 (citing Unruh Act, Cal. Civ. Code § 51(f)).  Thus, because Mr. Johnson has alleged an ADA claim based on Checkers' lack of accessible parking spaces and service counter, he has also alleged an Unruh Act claim based on those barriers.

### C.  Sum of Money in Dispute

"When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged."  *Bd. of Trustees v. Core Concrete Const., Inc.*, No. C 11-02532 LB, 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012), *report and recommendation adopted,* No. C 11-02532 JSW, 2012 WL 381198 (N.D. Cal. Feb. 6, 2012).  However, "where the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate."  *Id.* (citing *Bd. of Trustees of the Sheet Metal Workers Health Care Plan of N. California v. Superhall Mech., Inc.*, No. C-10-2212 EMC, 2011 WL 2600898, at *2 (N.D. Cal. June 30, 2011)).

Mr. Johnson seeks statutory damages of $8,000 under the Unruh Act and an award of $4,725 for attorneys' fees and costs.  Mot. at 12.  The Court reduces this amount as discussed below. While the sum awarded is not insignificant, the Court finds that it is proportional to the conduct alleged and that this factor weighs in favor of default judgment.

### D.  Possibility of Dispute Concerning Material Facts

Under the fifth and sixth *Eitel* factor, the Court considers whether there is a possibility of a dispute over material facts and whether Defendants' failure to respond was the result of excusable neglect. *Eitel*, 782 F.2d at 1471–72; *Love v. Griffin*, No. 18-CV-00976-JSC, 2018 WL 4471073, at *5 (N.D. Cal. Aug. 20, 2018), *report and recommendation adopted,* No. 18-CV-00976-JD, 2018 WL 4471149 (N.D. Cal. Sept. 17, 2018); *Ridola*, 2018 WL 2287668, at *13.

The Complaint asserts plausible claims for violations of the ADA and the Unruh Act and all liability-related allegations are deemed true.  *See TeleVideo Systems, Inc.*, 826 F.2d at 917–18 (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("The general rule of law is that upon default the factual allegations of the complaint . . . will be taken as true.").

Case No.: 5:19-cv-02671-EJD
ORDER GRANTING DEFAULT JUDGMENT

United States District Court
Northern District of California

1    Defendants were served with the Complaint, the Motions for Entry of Default, and the Motion for

2    Default Judgment.  Dkt. Nos. 10, 11, 17, 20, 25.  Despite being properly served, Defendants have

3    neither appeared nor answered the Complaint.  As discussed above, the public records submitted

4    introduce uncertainty about whether Mr. Cortese owns the real property at issue and, therefore, the

5    Court will not enter default judgment against Mr. Cortese.  Other than that factual discrepancy,

6    there are no disputes as to Mr. Johnson's allegations and no indication that Defendants' default

7    was due to excusable neglect.  *See In Suk Jun*, 2020 WL 6507995, at *6 (finding that defendants'

8    failure to appear suggests that they chose not to present a defense).

9                          **E.  Strong Policy Favoring Decisions on the Merits**

10          The last *Eitel* factor examines whether the policy of deciding a case based on the merits

11   precludes entry of default judgment.  *Eitel*, 782 F.2d at 1472.  In *Eitel*, the Ninth Circuit

12   admonished that "[c]ases should be decided on their merits whenever reasonably possible."  *Id.*

13   "The existence of Federal Rule of Civil Procedure 55(b), however, shows that this policy is not

14   dispositive."  *McMillan Data Commc'ns, Inc. v. AmeriCom Automation Servs., Inc.*, No. 14-CV-

15   03127-JD, 2015 WL 4380965, at *11 (N.D. Cal. July 16, 2015) (citing *Kloepping v. Fireman's*

16   *Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996)).  Moreover, a

17   defendant's failure to appear renders a decision on the merits impracticable, if not impossible.

18   *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010) (citation and

19   quotation marks omitted).

20          Given that Defendants in no way participated in the proceedings, a decision on the merits

21   is impracticable.  "In situations such as this, Rule 55(b) allows the court to grant default

22   judgment."  *Bd. of Trustees v. Diversified Concrete Cutting, Inc.*, No. 17-CV-06938-MEJ, 2018

23   WL 3241040, at *5 (N.D. Cal. July 3, 2018), *report and recommendation adopted sub nom. Bd. of*

24   *Trustees as Trustees of Laborers Health & Welfare Tr. Fund for N. California v. Diversified*

25   *Concrete Cutting, Inc.*, No. 17-CV-06938-RS, 2018 WL 4775429 (N.D. Cal. July 27, 2018).

26          Therefore, the Court **GRANTS** Mr. Johnson's motion for default judgment.

27

28   Case No.: 5:19-cv-02671-EJD
     ORDER GRANTING DEFAULT JUDGMENT
                                                11

United States District Court
Northern District of California

1

### V.    Relief Requested

Because this Court concludes that default judgment is warranted, it now considers Mr. Johnson's request for injunctive relief, as well as statutory damages under the Unruh Act, and attorneys' fees and costs.

### A.  Injunctive Relief

Mr. Johnson seeks an order requiring Defendants to provide accessible parking and an accessible sales counter at Checkers. Dkt. 26-2. Aggrieved individuals "may obtain injunctive relief against public accommodations with architectural barriers, including 'an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities.'" *Molski*, 481 F.3d at 730 (quoting 42 U.S.C. § 12188(a)(2)). Injunctive relief is also available under the Unruh Act. *See* Cal. Civ. C. § 52.1. "The standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute that specifically provides for injunctive relief." *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1175–76 (9th Cir. 2010) (citations omitted). Thus, injunctive relief is proper under the ADA where the plaintiff establishes that "architectural barriers at the defendant's establishment violate the ADA and the removal of the barriers is readily achievable." *Ridola*, 2018 WL 2287668, at *13 (citing *Moreno v. La Curacao*, 463 F. App'x 669, 670 (9th Cir. 2011)).

For the reasons stated above, Mr. Johnson has shown that he is entitled to injunctive relief with respect to the parking space and transaction counter at Checkers. Therefore, the Court GRANTS his request for injunctive relief.

### B.  Statutory Damages

Mr. Johnson seeks $8,000 in statutory damages for Defendants' violation of the Unruh Act. The Unruh Act provides a minimum statutory damages award of $4,000 for each violation. Cal. Civ. Code § 52(a). Mr. Johnson "need not prove [he] suffered actual damages to recover the independent statutory damages of $4,000" per violation. *Molski*, 481 F.3d at 731. "Any violation of the ADA necessarily constitutes a violation of the Unruh Act." *Id.* at 731 (citing Unruh Act, Cal. Civ. Code § 51(f)).

Case No.: 5:19-cv-02671-EJD
ORDER GRANTING DEFAULT JUDGMENT

1    Mr. Johnson has sufficiently pled that the parking lot and sales counter at the Checkers did

2    not meet ADA standards on the three separate occasions he visited.  Each of these barriers

3    constitutes a violation of the Unruh Act.  The Court, therefore, grants Mr. Johnson $4,000 in

4    statutory damages for each violation, for a total of $8000.

5                                    **C.  Attorneys' Fees**

6    Mr. Johnson requests $3860 in attorneys' fees.  Both the ADA and the Unruh Act permit

7    recovery of fees by a prevailing plaintiff.  42 U.S.C. § 12205; Cal. Civ. Code § 55.  Such fee-

8    shifting statutes "enable private parties to obtain legal help in seeking redress for injuries resulting

9    from actual or threatened violation of specific . . . laws."  *Pennsylvania v. Delaware Valley*

10   *Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S. Ct. 3088, 92 L. Ed. 2d 439 (1986),

11   *supplemented,* 483 U.S. 711, 107 S. Ct. 3078, 97 L. Ed. 2d 585 (1987). Recovery statutes,

12   however, are not intended "to punish or reward attorneys."  *Van Gerwen v. Guarantee Mut. Life*

13   *Co.*, 214 F.3d 1041, 1047 (9th Cir. 2000).  To calculate recoverable fees, both federal and state

14   courts look to the lodestar method.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933,

15   76 L. Ed. 2d 40 (1983); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132, 17 P.3d 735 (2001).  The court

16   arrives at this figure by multiplying the number of hours reasonably expended by a reasonable

17   hourly rate.  *Hensley*, 461 U.S. at 433; *Ketchum*, 24 Cal. 4th at 1132.

18                                    **i.  Hourly Rate**

19   "A reasonable hourly rate is ordinarily the prevailing market rate in the relevant

20   community."  *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) (internal quotation marks and

21   citation omitted).  "[T]he burden is on the fee applicant to produce satisfactory evidence—in

22   addition to the attorneys' own affidavits—that the requested rates are in line with those prevailing

23   in the community for similar services by lawyers of reasonably comparable skill, experience and

24   reputation."  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (internal

25   quotation marks and citation omitted).  In making this determination, courts look to other

26   decisions in "the forum in which the district court sits," and "accord[s] more weight to . . . fee

27   awards made in the last two years."  *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997); *see also*

28   Case No.: 5:19-cv-02671-EJD

United States District Court
Northern District of California

*Nadarajah v. Holder*, 569 F.3d 906, 917 (9th Cir. 2009).

Mr. Johnson seeks an hourly rate of $650 for attorneys Russel Handy and Mark Potter, $500 for attorney Amanda Seabock,[1] and $400 for attorney Faythe Gutierrez.  Dkt. No. 24-4, Declaration of Russel Handy in Support of Plaintiff's Application for Default Judgment by Court Against John J. Cortese and Izzet Yusuf Kufioglu ("Handy Decl.") ¶¶ 9-12.  Mr. Handy has 20 years of experience in ADA litigation, has prosecuted over a thousand disability rights cases including over 40 trials.  *Id.* ¶ 4.  Mr. Potter founded the Center for Disability Access and has 25 years of experience litigating over 2000 disability rights cases.  *Id.* ¶ 3.  Ms. Seabock graduated law school in 2011 and has approximately 7 years of experience litigating disability rights cases as an attorney.  *Id.* ¶ 5.  Ms. Gutierrez graduated law school in 2015 and spent approximately 5 years as a trial attorney for an insurance company before joining the Potter Handy firm in 2020.  *Id.* ¶ 6.

In support of the hourly rates requested, Mr. Johnson relies on the declarations of Mr. Handy, as well as Richard Pearl and John O'Connor, two attorneys' fees experts.  *See* Handy Decl.; Dkt. No. 24-9, Exhibit 6, Declaration of Richard M. Pearl in Support of Motion for Award f Reasonable Attorneys' Fees ("Pearl Decl"); Dkt. No. 24-11, Exhibit 8, Declaration of John O'Connor ("O'Connor Decl.").

This Court recently found Mr. O'Connor's Declaration "to be of limited use in determining the prevailing market rate."  *Johnson v. Progreso Dev., LLC*, No. 5:20-CV-02167-EJD, 2020 WL 6136093, at *3 (N.D. Cal. Oct. 19, 2020).  For the reasons this Court and other courts in this District have observed, the Court maintains that Mr. O'Connor's declaration, prepared in connection with another matter, is not persuasive for the purposes of determining hourly rates in the present case.  *See Johnson, v. Chi Mai, et al.*, No. 19-CV-00827-BLF, 2020 WL 6891822, at *4 (N.D. Cal. Nov. 24, 2020) (finding O'Connor's declaration "unpersuasive" due to his lack of experience in ADA litigation and reliance on the Laffey Matrix).

---

[1] Mr. Johnson's Memorandum suggests that Ms. Seabock charges $450 per hour, however, her hourly rate on the billing statement provided is $500.  Compare Mot. at 19 with Dkt. No. 26, Notice of Errata, Exhibit 1 ("Billing Statement").

Case No.: 5:19-cv-02671-EJD
ORDER GRANTING DEFAULT JUDGMENT
14

1    With respect to Mr. Pearl's Declaration, the Court finds it to be of even less value in

2    determining a reasonable rate here.  Mr. Pearl's Declaration was originally filed in 2010 in a

3    separate case with different counsel before the Ninth Circuit.  Mr. Johnson did not attach the

4    curriculum vitae that presumably accompanied the declaration when it was originally submitted,

5    but based on the declaration, Mr. Pearl does not appear to have any ADA-specific experience.

6    Although Mr. Johnson suggests that the fees his counsel seeks are "comparable to the rates that

7    existed ten years ago for ADA-like litigation as outlined in the Pearl declaration," he does not

8    explain any way in which the cases, lawyers, or law firms noted in Mr. Pearl's declaration are

9    comparable to this case or Plaintiff's counsel.  Mot. at 16.  In fact, Mr. Pearl's declaration was

10   prepared in connection with a heavily litigated ADA case presenting novel issues of law, which

11   went on for approximately 4 years and involved an appeal to the Ninth Circuit.  *See Antoninetti*,

12   643 F.3d 1165.  This Court finds that such a case is not of comparable complexity or duration to

13   the present case, nor are the cases that Mr. Pearl referenced in his declaration.  For these reasons,

14   Mr. Pearl's declaration does not support counsel's proposed hourly rates.

15   Another court in this District recently awarded Mr. Potter and Mr. Handy fees at an hourly

16   rate of $475 after engaging in an extensive analysis of the relevant factors.  *Oakwood Ctr.*, 2019

17   WL 7209040, at *13.  Additionally, this Court recently considered many of the arguments that Mr.

18   Johnson makes in favor of his counsel's proposed fees and determined that an hourly rate of $350

19   for Ms. Seabock was reasonable.  *Progreso*, 2020 WL 6136093, at *4.  Yet another court in this

20   District recently determined that an hourly rate of $250 was reasonable for Ms. Gutierrez.  *In Suk*

21   *Jun*, 2020 WL 6507995, at *8 ("As an attorney who graduated about five years ago and has less

22   than five years of experience litigating disability cases, this court awards Ms. Gutierrez $250 per

23   hour").  These rates are consistent with the rates recently awarded to these attorneys and other

24   attorneys from Plaintiff's counsel's firm in other cases in this District.  *See, e.g., Johnson v.*

25   *Johnson*, No. 17-CV-04840-SVK, 2020 WL 901517, at *6 (N.D. Cal. Feb. 25, 2020) (finding that

26   "an hourly rate of $475 is appropriate for Mr. Potter and Mr. Handy" and an hourly rate $450 is

27   appropriate for an attorney with 16 years of ADA litigation experience); *Johnson v. Express Auto*

28   
Case No.: 5:19-cv-02671-EJD
ORDER GRANTING DEFAULT JUDGMENT
15

United States District Court
Northern District of California

1    *Clinic, Inc.*, No. 18-CV-00464-KAW, 2019 WL 2996431, at *8 (N.D. Cal. July 9, 2019)

2    (awarding rates of $425 for Attorneys Potter and Handy and $350 for attorneys with less

3    experience); *Johnson v. AutoZone, Inc.*, No. 17-CV-02941-PJH, 2019 WL 2288111, at *7 (N.D.

4    Cal. May 29, 2019) (awarding a $250 hourly fee rate for attorneys who graduated law school

5    between five and eight years ago in a similar ADA case involving Mr. Johnson, who was

6    represented by the same firm in this action).

7         Mr. Johnson does not raise any reason why the Court's analysis should be different for the

8    present case and the Court sees no reason to depart from the rates that courts in this District have

9    recently and repeatedly found reasonable.  Thus, the Court finds that a reasonable hourly rate for

10   Mr. Potter and Mr. Handy is $475, a reasonable hourly rate for Ms. Seaback is $350, and a

11   reasonable hourly rate for Ms. Gutierrez is $250.

12                                    **ii.   Hours Billed**

13        This Court has explained that while "billing for time spent reviewing court orders is

14   generally reasonable, the Court also expects counsel in this case to be particularly familiar with the

15   Court's routine docket entries and communications."  In *Progreso*, the Court found that counsel

16   could not recover time spent reviewing standard docket entries and court communications that

17   were not unique to the case.  In this case, too, the Court finds it unreasonable for Ms. Seaback to

18   have spent 0.1 hour, or 6 minutes, reviewing the Court's Order Reassigning Case, a document that

19   is nearly identical in each of Mr. Johnson's cases in this District. *See* Billing Statement.  Nor is it

20   reasonable for Ms. Seaback to have, on two occasions, spent 6 minutes reviewing the Clerk's

21   Entry of Default as to each Defendant, both of which were standard, one-line orders. *Id.*  Thus,

22   the Court will deduct 0.3 hours of Ms. Seaback's time.

23        Additionally, on two occasions Ms. Seaback billed 0.1 hour for reviewing this Court's

24   orders granting administrative motions. *Id.*  In both instances, the order consisted entirely of the

25   proposed order prepared by Mr. Johnson, with slight modifications to correct typos. Dkt. Nos. 15,

26   19.  Having already billed 0.1 hours for the time it took to prepare the administrative motion,

27   including the proposed order, counsel cannot reasonably bill another 0.1 hours for reviewing that

28   Case No.: 5:19-cv-02671-EJD
     ORDER GRANTING DEFAULT JUDGMENT

     United States District Court
     Northern District of California

1 | proposed order once the Court has signed it.  Thus, the Court finds it appropriate to deduct 0.2

2 | from Ms. Seabock's time.

3 |   The Court finds the remainder of the time billed by the attorneys in this matter to be

4 | reasonable.  In sum, using the reasonable rates and hours outlined above, the Court awards

5 | attorneys' fees of $2510, as detailed below.

| Attorney | Total Time | Hourly Rate | Amount |
|---|---|---|---|
| M. Potter | 1.0 | $475 | $475 |
| R. Handy | 2.2 | $475 | $1045 |
| A. Seabock | 0.9 | $350 | $315 |
| F. Gutierrez | 2.7 | $250 | $675 |
| **Total** | **6.8** | | **$2510** |

   **iii.  Costs**

Section 505 of the ADA authorizes reasonable "litigation expenses and costs," in any action brought under the Act.  42 U.S.C. § 12205.  This includes all costs normally associated with litigation including investigative costs.  *Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002).

  Mr. Johnson seeks $865 in costs, consisting of $65 for service costs, $400 in filing fees, and $400 in investigation fees.  Mr. Johnson filed Proof of Service documents indicating that he paid fees of $30 and $35 to serve the two Defendants.  The Billing Statement submitted by counsel includes a line item for "Investigator" at $400.  Billing Statement at 1.  The Court finds that this documentation constitutes sufficient evidence in support of his request for costs.  The Court, therefore, awards $865 in costs.

  **VI. CONCLUSION AND ORDER**

  For the reasons stated, Plaintiff's Motion for Default Judgment is **GRANTED** as to Defendant Kufioglu only.

  Plaintiff's request for statutory damages in the amount of $8,000.00, attorneys' fees in the amount of $2510, and costs in the amounts of $865 for a total judgment of $11,375.00 is **GRANTED**.

Case No.: 5:19-cv-02671-EJD
ORDER GRANTING DEFAULT JUDGMENT
17

United States District Court<br>Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

Mr. Johnson's request for injunctive relief is **GRANTED**.  To the extent he has the legal right and ability to do so, Mr. Kufioglu is hereby ordered to provide an accessible parking space and an accessible sales counter at Checkers Auto Repair & Gas located at 3495 McKee Rd., San Jose, California, in compliance with the Americans with Disabilities Act Accessibility Guidelines.

**IT IS SO ORDERED.**

Dated: December 21, 2020

EDWARD J. DAVILA
United States District Judge

Case No.: 5:19-cv-02671-EJD
ORDER GRANTING DEFAULT JUDGMENT

18